UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TODD D.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00689 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Todd D. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). (*See id.*).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 6; Dkt. 12). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.

## **BACKGROUND**

On October 6, 2016, Plaintiff filed protective applications for DIB and SSI. (*See* Dkt. 3 at 295-302).[1] Plaintiff alleged that he was disabled because of congestive heart failure, diabetes, neuropathy, depression, high blood pressure, high cholesterol, hypertension, chronic pain, and chronic fatigue, with a disability onset date of July 28, 2016. (*See id.* at 327-28). The Social Security Administration ("SSA") initially denied Plaintiff's applications, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*See id.* at 150-63). Following a hearing on December 4, 2018, ALJ Paul Georger issued an unfavorable decision on February 26, 2019. (*See id.* at 73-98, 123-41). Plaintiff requested Appeals Council review, which was granted on July 8, 2020. (*See id.* at 142-47). The Appeals Council vacated the unfavorable decision because ALJ Georger did not adequately consider Plaintiff's mental impairments or evidence that had been submitted less than five business days before the hearing. (*See id.* at 144-45).

On April 16, 2021, Plaintiff had another hearing before ALJ Georger, who then issued an unfavorable decision on June 2, 2021. (*See id.* at 20-72). Plaintiff again requested Appeals Council review, which was denied on December 16, 2021. (*See id.* at 9-14). Plaintiff filed an appeal with this Court, which remanded his case to the Commissioner pursuant to a joint stipulation by the parties. (*See* Dkt. 4 at 414-18). On March 25, 2024, Plaintiff had a hearing before ALJ Stephan Bell, who issued an

---

[1] Page numbers in docket citations refer to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

unfavorable decision on April 4, 2024. (*See id.* at 288-354). Plaintiff then filed the present action on July 23, 2024. (Dkt. 1).

## LEGAL STANDARDS

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by "substantial evidence." *See* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation modified). However, "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citation modified).

### II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. *Id.* If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* But if the claimant does have at least one severe impairment, the ALJ continues to step three. *Id.*

At step three, the ALJ examines whether a claimant's severe impairment meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the severe impairment meets or medically equals the criteria of a listed impairment and has lasted, or is expected to last, for a continuous period of at least 12 months, then the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "'A regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* But if he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.

*Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant, in light of his or her age, education, and work experience, "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation modified); *see* 20 C.F.R. §§ 404.1560(c), 416.960(c).

## DISCUSSION

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (*See* Dkt. 4 at 291-314). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of July 28, 2016. (*See id.* at 294).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) coronary artery disease; (2) morbid obesity; (3) diabetes mellitus with neuropathy; and (4) nonunion of the sternum. (*See id.*). The ALJ also found that Plaintiff suffered from the following non-severe impairments: (1) hypertension; (2) high cholesterol; (3) gastroesophageal reflux disease ("GERD"); (4) a major depressive disorder; and (5) an unspecified anxiety disorder. (*See id.*). Further, the ALJ considered the impact of Plaintiff's severe and non-severe impairments on his mental work-related functioning and found that he was: (1) not impaired in understanding, remembering, or applying information; (2) not impaired in interacting with others; (3) not impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing himself. (*See id.* at 294-297).

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the Listings. (*See id.* at 298-99). In particular, the ALJ considered Listings 4.04 and 11.14. (*See id.*). Then, before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that:

> [Plaintiff] can frequently handle and finger items with his left hand. [He] can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. [He] can occasionally balance, stoop, kneel, crouch, and crawl. He can never work at unprotected heights or around moving mechanical parts and vibrations. [He] can never operate a motor vehicle as a job duty.

(*See id.* at 299).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 311). But at step five, the ALJ found that Plaintiff, given his age, education, work experience, and RFC, could perform work existing in significant numbers in the national economy as a semiconductor bonder, a charge account clerk, or a telephone solicitor. (*See id.* at 312-13). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Act between July 28, 2016, and April 9, 2024. (*See id.* at 314).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner for further administrative proceedings, arguing that the ALJ's RFC determination was unsupported by substantial evidence. (*See* Dkt. 6-1 at 14-25). More specifically, Plaintiff argues that the ALJ improperly evaluated the opinions of his treating provider, Nicholas Masyga, D.O.,

- 6 -

and rejected the most restrictive opinions through impermissible cherry-picking. (*See id.*). The Court has considered those arguments and, for the reasons discussed below, finds them to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). A claimant's RFC need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta*, 508 F. App'x at 56, and remand for further administrative proceedings is unnecessary as long as the ALJ's analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," *see Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

For claims filed on or before March 27, 2017, such as Plaintiff's, "there are specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Schillo*, 31 F.4th at 74-75 (citation modified); *see* 20 C.F.R. §§ 404.1527, 416.927. "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Schillo*, 31 F.4th at 75 (citation modified). "The opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record." *Id.* "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any,

to give it." *Id.* (citation modified). "The governing regulations require an ALJ to explicitly consider certain nonexclusive factors when making this determination: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* (citation modified); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). Colloquially, these factors "are sometimes referred to as the '*Burgess* factors.'" *Schillo*, 31 F.4th at 75; *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2009).

Further, "at both steps, the regulations require the ALJ to give 'good reasons'—i.e., reasons supported by substantial evidence in the record—for the weight [he or] she affords the treating source's medical opinion." *Schillo*, 31 F.4th at 75 (citation modified). But "if the ALJ proceeds to step two, [he or] she must *explicitly* apply the factors listed in [20 C.F.R. §§ 404.1527(c) and 416.927(c)]; the failure to do so is procedural error and subject to harmless error analysis." *Id.* (citation modified). In other words, "a court can conclude that such an error is harmless if the ALJ has otherwise provided 'good reasons' for [his or her] weight assignment." *Id.* (citation modified). "For instance, [the Second Circuit] has upheld an ALJ's denial of disability benefits even where the ALJ's written opinion failed to assist [the Court's] review on appeal and did not 'generate much confidence in the result.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).

Here, the ALJ considered eight different opinions by Dr. Masyga. (*See* Dkt. 4 at 306-10). Plaintiff takes issue with the ALJ's evaluation of those opinions because he assigned each of them limited weight. (*See* Dkt. 6-1 at 14-25). In Plaintiff's view, the ALJ

erred by not explicitly discussing the *Burgess* factors for each of Dr. Masyga's opinions and by selectively rejecting the most restrictive opinions. (*See id.*). Although the Court agrees that the ALJ did not explicitly discuss all of the *Burgess* factors for each opinion, such error was harmless because his reasons for assigning limited weight to Dr. Masyga's opinions were clear and supported by the record. *See, e.g.*, *Robert H. v. Comm'r of Soc. Sec.*, No. 6:21-cv-06263-EAW, 2023 WL 7319091, at *4-7 (W.D.N.Y. Nov. 7, 2023); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every [*Burgess*] factor where the ALJ's reasoning and adherence to the regulation are clear.").

On November 2, 2016, Dr. Masyga opined that Plaintiff: (1) could walk 1 mile without rest; (2) could continuously sit for more than 2 hours at a time; (3) could continuously stand for 2 hours at a time; (4) could sit for a total of at least 6 hours within an 8-hour workday; (5) could stand and walk for about 2 hours within an 8-hour workday; (6) would need to shift positions at will; (7) could frequently lift 10 pounds; (8) could occasionally lift 20 pounds; (9) could bend and twist 40% of an 8-hour workday; (10) should never be exposed to extreme heat, high humidity, fumes, odors, dusts, gases, cigarette smoke, or soldering fluxes; (11) could frequently twist, stoop, and crouch; (12) could occasionally climb stairs; and (13) would never be absent from work because of his impairments. (*See* Dkt. 3 at 866-68). After acknowledging Dr. Masyga's status as Plaintiff's primary care physician, the ALJ gave that opinion "some weight" because it was consistent with sedentary work, as well as with Plaintiff's "lack of subjective complaints and [his] normal physical examinations at the time." (*See* Dkt. 4 at 306-07). But the ALJ

also acknowledged that the opinion "was rendered before it was known that [Plaintiff's] sternum had failed to heal properly." (*See id.* at 307).

On July 13, 2017, November 12, 2018, November 11, 2019, and January 18, 2021, Dr. Masyga completed four nearly identical forms in which he opined that Plaintiff was "very limited" in his ability to walk, lift, carry, push, pull, bend, and climb and "moderately limited" in his ability to stand. (*See id.* at 3-4, 8-9, 216-17, 220-21). The ALJ gave those opinions "some weight" because they were consistent with sedentary work and "supported by [Plaintiff's] subjective complaints, [his] essentially normal physical examinations, and [the] diagnostic testing showing the non-union of [Plaintiff's] sternum." (*See id.* at 308-09). But the ALJ otherwise found the opinions vague because they "contained no definitions for [the terms] 'very limited' and 'moderate,'" as well as because "Dr. Masyga did not provide any specific functional limitations (*e.g.*, how much weight [Plaintiff] could lift and carry, how many hours [he] could sit, stand, or walk, etc.) on or with the form." (*See id.*).

Dr. Masyga's remaining three opinions—signed on November 20, 2018, August 27, 2020, and March 22, 2021, respectively—were wholly incompatible with sedentary work. (*See* Dkt. 3 at 1222-24; Dkt. 4 at 22-25, 230-37). The ALJ gave those opinions "little weight" because, although they were consistent with Plaintiff's subjective complaints, they were "not consistent with [Plaintiff's] essentially normal physical examinations or [his] reported activities [of] walking his dogs daily, bicycling, cooking, washing laundry, washing dishes, vacuuming, mowing the lawn, [and] shopping." (*See* Dkt. 4 at 308-10). Those reasons were "good reasons" to assign little weight to Dr. Masyga's opinions that

were wholly incompatible with sedentary work.  *See Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) ("The ALJ did not err in declining to afford Dr. Letourneau's opinion controlling weight because his opinion is inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and Rusin's reported activities of daily living."); *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion.").  And those reasons also were supported by the record.  (*See, e.g.*, Dkt. 4 at 170 (treatment note by Dr. Masyga on August 12, 2020, acknowledging that Plaintiff denied experiencing "chest pain, lightheadedness, orthopnea, palpitations, [paroxysmal nocturnal dyspnea], shortness of breath [or] syncope."); *id.* at 334 (portion of administrative hearing transcript in which Plaintiff indicated that he is able to take long and short walks, as well as play video games on his laptop)).

In sum, the ALJ did not commit reversible error when evaluating Dr. Masyga's opinions.  *See Holler v. Saul*, 852 F. App'x 584, 586 (2d Cir. 2021) ("Where, as here, the ALJ provided a detailed explanation for her decision to give less than controlling weight to a treating physician's opinions . . . , the ALJ's failure to explicitly discuss each of the four [*Burgess*] factors . . . is not *per se* reversible error." (citation modified)).  It is the responsibility of the ALJ and not this Court "to weigh conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  The ALJ provided good reasons for affording limited weight to Dr. Masyga's opinions, and the Court has no difficulty gleaning the basis for the ALJ's RFC determination, which clearly mirrors Dr.

Masyga's first opinion from November 2, 2016, but includes additional postural and environmental limitations to account for Plaintiff's sternum pain, fatigue, and neuropathy. *See, e.g.*, *Daniel M. v. Comm'r of Soc. Sec.*, No. 23-CV-0671-LJV, 2025 WL 2783005, at *5 (W.D.N.Y. Sept. 30, 2025) (concluding that "the ALJ was entitled to deviate from Dr. Putcha's opinion and find Daniel more limited based on the record as a whole." (also collecting cases)). Accordingly, Plaintiff is not entitled to remand based on the ALJ's evaluation of Dr. Masyga's opinions.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   January 23, 2026
         Rochester, New York